**ENCINA PARTNERSHIP, Appellant,**

v.

**CORENERGY, L.L.C., Appellee.**

No. 13–99–654–CV.

Court of Appeals of Texas, Corpus Christi.

June 21, 2001.

Rehearing Overruled July 19, 2001.

William L. Sciba, III, Emmett Cole, Jr., Cole, Mccanus, Cole & Easley, Victoria, for Appellants.

Michael T. Trefny, Morris & Campbell, Michael D. Stewart, Houston, for Appellees.

Before Justices HINOJOSA, YAÑEZ, and CHAVEZ.[1]

## OPINION

Opinion by Justice YAÑEZ.

Encina Partnership appeals from a directed verdict rendered in favor of COREnergy, L.L.C. We affirm.

### Background

COREnergy engages in oil and gas exploration in Texas. COREnergy hires "landmen" to research potential properties for exploration. A landman investigates property records to determine who owns mineral interests in areas targeted for exploration, then arranges for the owners of the mineral interests to sign a permit to allow COREnergy to do seismic testing on properties which have the potential for containing oil and gas reserves. When an owner signs the permit, the landman issues a draft for the amount of money to be paid to the owner if COREnergy accepts the permit. When COREnergy accepts a permit, it pays the draft.

In December of 1997, COREnergy began to recruit landmen to research an area that COREnergy believed to have potential for oil and gas development. In 1998, a landman working for COREnergy determined that Encina owned a ⅛ mineral interest in part of the area being investigated. Another company was already negotiating with Encina; however, no contract had been signed. A landman employed by COREnergy contacted Daniel Gustafson, Encina's managing general partner, and negotiated for a permit for COREnergy to enter the land and do seismic testing on the property in which Encina held its mineral interest.[2] COREnergy was to pay forty-five dollars an acre for the land, which was an unusually good price for a ⅛ mineral interest. Three drafts were issued; two of them, for a total value of $192,240, to be paid to "Encina Partnership by Daniel Gustafson, Managing General Partner," the third, for

---

1. Retired Justice Melchor Chavez assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

2. The property in which Encina owns its ⅛ interest is the Encina Ranch. Encina owns the surface of this property, which consists of approximately 4,272 acres; however ⅞ of the mineral interest to this ranch is held by another entity which is not a party to this suit.

a value of $5,000, to be paid to Gustafson individually. The day after the drafts were issued, COREnergy refused to pay them.

Encina filed suit against COREnergy, alleging causes of action including breach of contract and fraud, and arguing that COREnergy was estopped to deny the existence of its obligation. The case was tried before a jury. At the close of Encina's case, COREnergy moved for a directed verdict on the contract claims, arguing that the contract claims were the only claims Encina included in its proposed charge to the jury. After hearing argument, the trial court stated that it was overruling the motion, although it might reconsider the motion in the future. COREnergy presented its case and the jury was charged.[3] After deliberation, the jury was unable to reach a verdict on the case and was discharged by the trial court on July 2, 1999. COREnergy filed an amended motion for directed verdict on July 26, 1999. On July 30, 1999 the trial court held a hearing on COREnergy's motion for directed verdict and granted the motion with an order stating that Encina take nothing on its claims. Encina filed a motion for new trial, which was denied.

Encina challenges the trial court's judgment, arguing that the trial court erred by; 1) granting COREnergy's motion for directed verdict, and 2) failing to grant a mistrial following the discharge of the jury.

### The Directed Verdict Standard of Review

■ A directed or instructed verdict is proper when: (1) a specifically indicated defect in the opponent's pleadings makes it insufficient to support a judgment; (2) the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law; or (3) the evidence offered on a cause of action is insufficient to raise an issue of fact. *City of Alamo v. Casas,* 960 S.W.2d 240, 248 (Tex.App.—Corpus Christi 1997, pet. denied); *Nelson v. American Nat'l Bank of Gonzales,* 921 S.W.2d 411, 414 (Tex.App.—Corpus Christi 1996, no writ). When reviewing a directed verdict, we consider all the evidence in the light most favorable to the party against which the verdict was rendered and disregard all contrary evidence and inferences. *Qantel Bus. Sys. v. Custom Controls,* 761 S.W.2d 302, 303–04 (Tex. 1988); *Villarreal v. Art Inst. of Houston,* 20 S.W.3d 792, 796 (Tex.App.—Corpus Christi 2000, no pet.). When no evidence of probative force on an ultimate fact element exists, the trial court has the duty to instruct the verdict. *Villarreal,* 20 S.W.3d at 796; *Nelson,* 921 S.W.2d at 415. A reviewing court may affirm a directed verdict even if the trial court's rationale for granting the directed verdict is erroneous, provided the verdict can be supported on another basis. *Villarreal,* 20 S.W.3d at 796.

### The Basis of the Directed Verdict

■ In its amended motion for directed verdict, COREnergy argued that there was no contract between COREnergy and Encina, either because there was a lack of mutuality or because a condition precedent to the formation of the contract had not been performed.[4] COREnergy relied upon *Spellman v. Lyons Petroleum, Inc.,* 709 S.W.2d 295 (Tex.App.—Houston [14th Dist.] 1986, no writ), to support its mutuality argument, while citing to *Sun Exploration and Prod. Co. v. Benton,* 728 S.W.2d

---

3. The charge to the jury, as requested by Encina, only addressed Encina's breach of contract claims.

4. The trial court's order granting the directed verdict does not specify which basis it relied upon in making its ruling.

35 (Tex.1987), to support its claim that a condition precedent had not been performed. We find *Sun Exploration* to be controlling in the case now before this Court and we hold that there is no enforceable contract between COREnergy and Encina.

In *Sun Exploration,* a land man contacted Benton to obtain a lease. *Sun Exploration,* 728 S.W.2d at 36. Benton executed a lease, which was filed in the deed records for Leon County on December 14, 1982, and a draft was deposited for collection on December 9, 1982. *Id.* The draft contained the provision "15 days after sight and upon approval of title." *Id.* Sun dishonored the draft within the fifteen day period. *Id.* On appeal, Sun argued that Benton was not entitled to recover for breach of contract as a matter of law, because if any contract existed, it consisted of the lease and draft, both of which would have to be construed together to ascertain the intent of the parties. *Id.* at 37. Sun argued that, as a result, the provision in the draft, "15 days after sight and upon approval of title," constituted a condition precedent to Sun's liability on the draft. *Id.*

The supreme court agreed, stating:

A contemporaneously exchanged draft and deed must be construed together. Here, the language on the face of the draft made Sun's approval of title a condition precedent to formation of the contract. Where the grantee imposes certain conditions precedent to acceptance, title does not pass under the deed until fulfillment of such conditions. The draft effectively protected Sun against paying for the property if it disapproved the title.

*Id.* (citations omitted).

The facts in the instant case are remarkably similar to those in *Sun Exploration.* Encina, through its managing general partner, signed a permit to allow COREn-

ergy to conduct seismic testing on the Encina ranch on June 18, 1998. Three drafts were deposited, each containing the notation "[o]n approval of seismic permit or lease described hereon and on approval of title to same by drawee not later than 3 days after the arrival of this draft at collecting bank ." COREnergy dishonored the drafts within three days of the drafts arriving at the collecting bank.

We find that the language on the face of the drafts renders COREnergy's approval of the seismic permit a condition precedent to the formation of the contract with Encina. If COREnergy disapproved of the permit, it was protected from paying for the permit to conduct testing on the Encina ranch. Encina is not entitled, as a matter of law, to recover for breach of contract because the condition precedent to the formation of the contract did not occur. The trial court did not err by granting a directed verdict for COREnergy. Appellant's first issue is overruled.

### The Mistrial

■ In its second issue on appeal, Encina argues that the trial court erred by not granting a mistrial at the time that the court determined that the jury could not reach a verdict. When a jury is unable to agree upon a verdict and has been discharged, but no order of mistrial has been entered, the trial judge may reconsider and act upon a motion for instructed verdict. *Nelson v. Data Terminal Systems, Inc.,* 762 S.W.2d 744, 748 (Tex.App.—San Antonio 1988, writ denied); *Clevenger v. Liberty Mutual Ins. Co.,* 396 S.W.2d 174, 176 (Tex.Civ.App.—Dallas 1965, writ ref'd n.r.e.). Encina's second issue is overruled.

The judgment of the trial court is AFFIRMED.